NEW YORK DOCK COMPANY *v.* STEAMSHIP POZNAN, ETC., ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 229.   Argued March 15, 1927.—Decided April 11, 1927.

1. Wharfage service rendered to an arrested ship with the approval or permission of the admiralty court and inuring to the benefit of the fund arising from her sale is entitled to preference, in the distribution of the fund, over the claims of libeling cargo owners. P. 120.

2. Such preference is not based on a lien but is an incident of the equitable administration of the fund.   P. 120.

3. A finding of a special commissioner, confirmed by the District Court, as to the reasonable value of wharfage should not be disturbed here when based on a fair trial and sustained by evidence.   P. 123.

4. Objections respecting the amount so found, not raised or considered below, will be examined here only so far as necessary to make certain that no palpable error was committed.   P. 123.

9 F. (2d) 838, reversed.

297 Fed. 345, affirmed.

CERTIORARI (269 U. S. 547) to a decree of the Circuit Court of Appeals which reversed a decree of the District Court, in admiralty, allowing preferential payment of wharfage out of a fund arising from the sale of a vessel.

*Mr. Alexander J. Field,* with whom *Messrs. Joseph S. Auerbach, Charles E. Hotchkiss,* and *Charles H. Tuttle* were on the brief, for petitioner.

*Messrs. George W. Betts, Jr.,* and *Mark W. Maclay,* with whom *Edna F. Rapallo* was on the brief, for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

This case involves the right of a wharf owner to preferential payment from the proceeds of a vessel, for wharfage furnished the vessel while in the custody of a United States marshal under a warrant of arrest in admiralty. The owner of the S. S. Poznan entered into a contract with petitioner, the owner of a private pier in New York harbor, for the use of the pier for discharging cargo from December 1, 1920 until completion. The rate agreed upon was $250 per day, plus certain incidental charges not now material. On December 2, 1920, the Poznan was made fast to the pier. Later in the day, she was arrested by the United States marshal for the district upon libels, afterward consolidated into a single cause, for non-delivery of the vessel's cargo and for damages for breach of contracts of affreightment. The marshal allowed the vessel to remain at the pier. Later, on application of one of the libelling cargo owners, the district court ordered the delivery of a part of the cargo which that libellant had shipped, and made the order applicable to all other libellants who should make a like claim. The discharge of the cargo was then begun and deliveries were made to the several libellants in the consolidated cause, including respondent, the John B. Harris Co.

After the cargo had been about one-half discharged, the charterer applied to the district court for leave to move the vessel to another pier where the cargo could be removed more expeditiously. But, on request of some of the libellants and a committee representing the ship-

pers, the application was denied on January 5, 1921. The vessel was unloaded by February 18, 1921. Delivery of the cargo from the pier was completed March 1, 1921, but the vessel remained fast to the pier to and including March 11, 1921, when she was removed.

Meanwhile, the marshal having declined to pay the bill for wharfage without an order of the court, petitioner, in April, 1921, filed its libel against the vessel for the balance of wharfage charges unpaid, aggregating $17,462. By order of the district court, the libellants in the consolidated cause were permitted to intervene. Respondent, the John B. Harris Co., served notice of intervention, and filed its answer denying the allegations in the libel and praying that it be dismissed on the ground, among others, that the wharfage was furnished while the vessel was in the custody of the marshal, and hence no maritime lien could arise. Respondent has since prosecuted the defense in behalf of all the other libellants in the consolidated cause.

The vessel was later sold under an order in the consolidated cause and the proceeds, which were not enough to satisfy the libellants, paid into the registry of the court. The libellants in the consolidated suit have made common cause by stipulation that the recovery under the final decree should be paid to trustees and distributed in accordance with the instructions of a committee representing all of them. The committee found the total claims of the libellants to exceed the amount of the proceeds of the ship. A pro rata distribution has been made to the claimants and an adequate amount reserved to pay the demand of the petitioner, if allowed in this suit. The marshal, although refusing petitioner's request for payment of the wharfage charge, nevertheless included it in his bill of costs and expenses in the consolidated cause and charged his commission on this amount. The court disallowed these items but "without prejudice to any

rights of the New York Dock Company to have recourse against the proceeds of the vessel . . ."

The district court, in the present libel, allowed as a preferential payment from the proceeds of the ship, the reasonable value of the benefits resulting to the consolidated libellants from the wharfage and incidental service furnished by petitioner, to be determined by a special master. This was found by the master and held by the district court to be the reasonable value of the wharfage. A decree for this amount, less certain payments on account made by the owner of the ship, pursuant to the original contract of wharfage, 297 Fed. 345, was reversed by the circuit court of appeals for the second circuit. 9 F. (2d) 838. This Court granted certiorari. 269 U. S. 547.

The court below held that as the wharfage was furnished after the arrest of the ship, and while it was in the custody of the law, no maritime lien could attach, and that a preferential payment could not be supported upon any other theory applicable to the facts of this case.

A question much argued, both here and below, was whether the case could be considered an exception to the general rule that there can be no maritime lien for services furnished a vessel while *in custodia legis*. Cf. *The Young America*, 30 Fed. 789; *The Nisseqogue*, 280 Fed. 174; *Paxson* v. *Cunningham*, 63 Fed. 132; *The Willamette Valley*, 66 Fed. 565. But, in the view we take, the case does not turn upon possible exceptions to that rule, as we think petitioner's right of recovery depends, as the district court ruled, not upon the existence of a maritime lien, but upon principles of general application which should govern whenever a court undertakes the administration of property or a fund brought into its custody for the benefit of suitors.

The libellants in the consolidated cause were not only concerned as owners in securing delivery of the cargo, but as lienors they were interested in the ship and, as eventually appeared, in the whole of her proceeds. Serv-

ice rendered to the ship after arrest, in aid of the discharge of cargo, and afterward pending the sale, necessarily inured to their benefit, for it contributed to the creation of the fund now available to them. The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an " expense of justice." *The Phebe,* 1 Ware 354, 359, Fed. Cases 11065. This is the familiar rule of courts of equity when administering a trust fund or property in the hands of receivers. The rule is extended, in making disposition of the earnings of the property in the hands of the receiver, to require payment of sums due for supplies furnished before the receivership, where their use by the debtor or receiver in the operation of the property has produced the earnings. See *Fosdick* v. *Schall,* 99 U. S. 235; *Thomas* v. *Western Car Co.,* 149 U. S. 95, 110; *Virginia & Alabama Coal Co.* v. *Central R. R.,* 170 U. S. 355; *St. Louis, &c. R. R.* v. *Cleveland, &c. Ry.,* 125 U. S. 658, 663, 673; *Southern Ry.* v. *Carnegie Steel Co.,* 176 U. S. 257; *Pennsylvania Steel Co.* v. *New York City Ry.,* 208 Fed. 168; *Pennsylvania Steel Co.* v. *New York City Ry.,* 216 Fed. 458, 470.

Such preferential payments are mere incidents to the judicial administration of a fund. They are not to be explained in terms of equitable liens in the technical sense, as is the case with agreements that particular property shall be applied as security for the satisfaction of particular obligations or vendors' liens and the like, which are enforced by plenary suits in equity. They result rather from the self-imposed duty of the court, in the exercise of its accustomed jurisdiction, to require that expenses which have contributed either to the preservation or creation of the fund in its custody shall be paid before a general distribution among those entitled to receive it.

We need not inquire here into the exact limits of the powers of courts of admiralty to administer equitable relief as distinguished from that peculiar to the courts of admiralty. This is not a suit, as the court below seemed to think, for the enforcement of an equitable lien. The court of admiralty is asked, in the exercise of its admiralty jurisdiction, to administer the fund within its custody in accordance with equitable principles as is its wont. Cf. *United States* v. *Cornell Steamboat Co.*, 202 U. S. 184, 194; *The Eclipse*, 135 U. S. 599, 608; Benedict, Admiralty, 5th ed., § 70. It is defraying from the proceeds of the ship in its registry an expense which it has permitted for the common benefit and which, in equity and good conscience, should be satisfied before the libellants may enjoy the fruits of their liens.

Such a preferential payment from the proceeds of the ship, for wharfage furnished to her while in custody, was allowed by the court below in *The St. Paul*, 271 Fed. 265. But in the present case, that court thought that *The St. Paul* case was to be distinguished on the ground that there the wharfage service was furnished and the obligation incurred in accordance with an order made by the court and with the consent of the libellants. But here the court denied a motion to remove the ship from petitioner's wharf with the consent of some of the libellants and with full knowledge of all concerned that the wharfage was then being furnished. The libellants in the consolidated cause, who are united in interest with respondent in the present case, thus appear to have acquiesced in this determination. We are unable to perceive any basis for a distinction between action of the court in authorizing the ship to proceed to the wharf to enable it to discharge its cargo in the one case, and authorizing it to remain there for a like purpose in the other. It is enough if the court approves the service rendered or per-

mits it to be rendered, and it inures to the benefit of the property or funds in its custody.

Objection is made that the amount found by the special master and confirmed by the district court as the reasonable value of the wharfage furnished is excessive, but this issue of fact was fairly tried. The finding of the special commissioner is supported by the evidence and should not be disturbed here. Respondent attempts to raise here questions with respect to the amount of recovery which were neither raised nor considered below. We have examined them only so far as is necessary to ascertain that no error was committed by the district court so plain or apparent as to warrant our consideration on such a state of the record. Cf. *Pierce* v. *United States,* 255 U. S. 398, 405; *Hiawassee Power Co.* v. *Carolina-Tenn. Co.,* 252 U. S. 341; *Ill. Cent. R. R.* v. *Mulberry Coal Co.,* 238 U. S. 275, 281; *Givens* v. *Zerbst,* 255 U. S. 11, 22; *Tilden* v. *Blair,* 21 Wall. 241, 249.

The decree below must be reversed and that of the District Court reinstated.

*Reversed.*

MR. JUSTICE HOLMES took no part in the consideration and decision of this case.