**EMPRESSA NACIONAL "ELCANO" DE LA MARINE MERCANTE**

**v.**

**The M/V TROPICANA, etc., et al.**

**No. 6638.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 21, 1965.

Bigham, Englar, Jones & Houston, New York City, and Henry J. Read, New Orleans, La., for libellant.

Walter Carroll, Jr., New Orleans, La., for intervenors Arnessen Electric Co. Inc., Crescent Towing & Salvage Co. Inc., Farboil Co., Gulf Marine & Indust. Corp., Port Ship Service (a partnership) and San Pedro Harbor Ship Supply.

H. Barton Williams, New Orleans, La., for intervenor Standard Fruit & S.S. Co.

Nigel Rafferty, New Orleans, La., for intervenor Todd Shipyards Corp.

CHRISTENBERRY, Chief Judge.

Empressa Nacional "Elcano" De La Marina Mercante, hereafter called Elcano, filed its libel seeking foreclosure of a mortgage on the M/V Tropicana pursuant to the Ship Mortgage Act, 46 U.S.C.A. § 951. On November 2, 1964, this Court entered a final decree foreclosing the mortgage as prayed for in the libel by Elcano. On November 9, 1964, the Clerk of Court issued a writ venditioni exponas ordering the sale of the vessel on the 23rd of November, 1964. Before the foreclosure sale, Standard Fruit and Steamship (Standard); Gulf Marine & Industrial Supplies, Inc.; The Farboil Company; San Pedro Harbor Ship Supply; Mercantile Ship Supply Co.; Arnessen Electric Company, Inc. intervened to assert maritime liens against the vessel and moved the Court to require the mortgagee, before consummating the sale of the vessel or removing it from the jurisdiction of the Court, to deposit with the Court a bond sufficient to secure the liens of the various intervenors. The motion of the intervenors was granted.

Now before the Court is a motion by Elcano to cancel the surety bonds filed by it in compliance with the Court's order to secure the claims asserted by the intervening libellants on the ground that the claims asserted by the intervenors did not give rise to maritime liens.[1]

| 1. INTERVENING LIBELLANTS | AMOUNT OF BOND |
|---|---|
| Arnessen Electric Company, Inc., | $11,000.00 |
| Crescent Towing & Salvage Co. Inc.; Port Ship Service; Gulf Marine & Industrial Supplies, Inc.; Farboil Company, | 4,300.00 |
| Gulf Marine & Industrial Supplies, Inc.; The Farboil Company; San Pedro Harbor Ship Supply; Mercantile Ship Supply Corporation, | 7,000.00 |
| Standard Fruit & Steamship Company, | 65,000.00 |
| Todd Shipyards Corporation, | 4,200.00 |

There are four different classes of claims presented in this matter. First, Elcano is claiming a maritime lien on the vessel under a preferred ship mortgage dated September 17, 1963, executed in accordance with the laws of the Kingdom of Greece, wherein the vessel was documented, and registered at Pireaus, Greece. The shipowner failed to meet the payment due on June 1, 1964, and on November 2, 1964 this Court entered a final decree foreclosing the mortgage. The mortgage instrument encumbering the vessel contained the following provision:

"6. Neither the shipowner, any charterer, the master of the vessel, nor any other person, has or shall have any right, power or authority to create, incur or permit to be placed or imposed or continued upon the vessel, any lien whatsoever other than claims for crews wages or salvage."

Second, Standard Fruit, the charterer of the vessel, claims a maritime lien for unearned advance charter hire in the amount of $65,000.00. Standard's intervening libel asserts that the charter party was executed on August 9, 1963, in substitution for and as an extension of a previous charter party in effect from June 15, 1962. The charter party provides:

"4(e) Charterer shall have a lien on the vessel for all monies paid in advance and not earned, any overpaid hire or excess deposit to be returned at once. * * *"

Third, Gulf Marine, Farboil, San Pedro, Mercantile, Arnessen and Todd Shipyards, intervening libellants, are claiming maritime liens for either repairs, supplies, towage, use of the marine railway, or other necessaries furnished in the United States to the vessel at the request of those to whom the management of the ship had been entrusted, these supplies or services having been furnished after the execution and registration of the mortgage but prior to default by the mortgagor. Fourth, Crescent Towing, Port Ship Service, Gulf Marine and Farboil assert maritime liens for repairs, etc. furnished in the United States for the preservation of the Tropicana while the vessel was in custodia legis.

## 1.
## THE INTERVENING LIBEL OF STANDARD FRUIT & STEAMSHIP COMPANY

■ Standard Fruit, the charterer of the M/V Tropicana, claims a lien of $65,-000.00 for unearned advanced charter hire. The charterer states in its intervening libel that the charter party was made August 9, 1963. Elcano, to the contrary, asserts that charter was not made and executed until October 28, 1963, more than one month after the mortgage with its no-lien clause was recorded in Pireaus, Greece. Thus as to this claim there are genuine issues as to material facts.

The remaining question to be determined is whether the other intervening libellants acquired maritime liens on the vessel.

## THE INTERVENING LIBELS OF GULF MARINE; FARBOIL; SAN PEDRO; MERCANTILE; ARNESSEN; AND TODD SHIPYARDS FOR SUPPLIES PRIOR TO DEFAULT OF THE MORTGAGOR.

■ The above intervening libellants are asserting maritime liens for repairs, supplies and other necessaries furnished to the M/V Tropicana. Intervenors' rights are governed by the provisions of the Ship Mortgage Act. Section 951 of Title 46 U.S.C.A. provides:

"Provided however, That such 'preferred mortgage lien' in the case of a foreign vessel shall also be subordinate to martime liens for repairs, supplies, towage, use of drydock or marine railway, or other necessaries, performed or supplied in the United States."

**402**

The M/V Tropicana is a foreign vessel, therefore the mortgage lien is subordinated by the last paragraph of Section 951 to maritime liens for repairs, supplies and necessaries. Atlantic Steamer Supply Company v. The Tradewind (D.C. Md.1956) 144 F.Supp. 408; O'Brien Bros. Shipyard Corp. v. The Hila, 1959 AMC 177; Gilmore and Black, The Law of Admiralty, 1957, pp. 613–614.

THE INTERVENING LIBELS OF CRESCENT TOWING, PORT SHIP SERVICE, GULF MARINE AND FARBOIL FOR SERVICES WHILE THE VESSEL WAS IN CUSTODIA LEGIS.

█ The above intervening libellants assert claims for services and repairs rendered to the M/V Tropicana for the preservation of the vessel while it was in custodia legis. Movant cites numerous cases to the effect that there is no lien for services furnished a vessel while in custodia legis. Although the services would not create a lien in favor of these intervening libellants, the claims may have achieved the status of priority over the mortgage lien by virtue of section 953(b) (2), Title 46 U.S.C.A., as "expenses * * * allowed * * * by the court." Roy v. M/V Kateri Tek (E.D.La. 1965), 238 F.Supp. 813.

The Supreme Court in New York Dock Company v. Steamship Poznan, 274 U.S. 117, 121, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927) stated:

"The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'"

In light of the foregoing discussion this part of motion must be denied.

The motion of libellant to cancel surety bonds filed by libellant to secure the claims asserted by intervening libelants is denied.