**HANNA et al. v. The METEOR et al.**

**No. 18691.**

United States District Court
E. D. New York.

April 17, 1950.

Decree Affirmed Oct. 6, 1950.
See 184 F.2d 439.

Logan Cresap, Jr., New York City, for libelant.

Bernard Tompkins, New York City, for respondent.

INCH, Chief Judge.

This is an action *in rem* to enforce a maritime lien against the Steamship Meteor, for work, labor and services furnished in painting a part of the vessel. Claimants concede that the work was performed and that the agreed price was $585, the amount of the lien asserted by libelant.

In view of what has already been decided on a prior appeal herein, the only question presented is whether the Meteor was a "dead" ship at the time of the rendition of services, for upon that determination depends whether the subject-matter of the suit is within the admiralty jurisdiction of this Court.

After issue was joined, claimants moved to dismiss the libel asserting that the action was outside the Court's admiralty jurisdiction because the Meteor was a "dead" ship, i. e., a vessel completely withdrawn from navigation and commerce. The trial judge thereupon dismissed the libel relying upon the authority of our Court of Appeals in Murray v. Schwartz et al., 2 Cir., 175 F.2d 72, where it had been held on the facts there presented, that this same vessel, the Steamship Meteor, was a "dead" ship, so that no maritime lien arose for "wharfage" furnished her for the period between July 1, 1947 and October 7, 1947. However, on appeal, the Court of Appeals reversed this decree dismissing the instant libel,

Hanna v. The Meteor, 2 Cir., 179 F.2d 957, 958, stating in part:

"The trial judge dismissed the libel upon the authority of our decision, above referred to, in Murray v. Schwartz, et al., 175 F.2d 72. It is evident that the decree of the court below must be reversed. There is no evidence in the present record that the Meteor was a 'dead' ship. On the contrary, the libel alleged that she was a vessel used by the owners in the general business of carrying cargo and passengers for hire. The denial of the allegation of admiralty jurisdiction in the amended answer raised an issue which must be disposed of upon a trial and not by the mere reference to the judgment in a suit by another libellant which was manifestly not *res judicata* in a suit by other parties.

"It is argued that 46 U.S.C.A. § 971 applied to this case, whether or not the Meteor was a 'dead' ship, that our decision in Murray v. Schwartz, supra, related only to wharfage liens, and that liens for wharfage are not recognized upon vessels out of service and have received a special treatment by our courts of admiralty which in view of the above statute should not be given to services such as the libellants performed in the case at bar. While we see no justification for the attempted distinction between a lien for wharfage and a lien for repairs, if the vessel has been completely withdrawn from commerce, we must hold that the libellants are not bound by findings of fact made against a libellant in another suit, and are entitled to present their claim in their own way under the libel which they have filed. '

"For the foregoing reasons, the decree is reversed, with costs to the appellants, and the cause is remanded for trial on the merits."

A trial on the merits has now been held, and after full presentation of the evidence, it is abundantly clear that the physical condition of the Meteor on May 5th and 6th, 1947 when these painting services were performed was the same as on July 1, 1947 and thereafter when the trial judge in Murray v. Schwartz, supra, had found the Meteor to be a dead ship.

Findings of Fact

1. On May 5th and 6th, 1947 the Meteor was completely withdrawn from navigation and commerce, and was not used by the owners in the business of carrying cargo or passengers. Prior thereto the vessel was part of the James River Reserve Fleet, consisting of out-of-service vessels, and on March 21, 1947 was purchased by claimant Krause from the United States Maritime Commission. Her United States Coast Guard Certificate of Inspection had expired on June 20, 1946 and there is no evidence of any subsequent renewal. Likewise, her Certificate of Enrollment and License with the Bureau of Customs had expired on June 19, 1946 and was never renewed.

2. On March 23, 1947 the Meteor was towed from Norfolk, Virginia, to Pier 69, East River, New York, where the painting services were performed. On May 21, 1947 the vessel was towed to Whitestone, Long Island, where the berth was found unsafe and on the same day towed back to Pier 69, East River. On June 11, 1947 it was towed from Pier 69, East River to Shooters Island, off Staten Island, New York, and remained there until sold for scrap in 1948.

3. During the entire period that the vessel was in New York, and until it was sold for scrap, it had no crew, no machinery was in operation, and it had no light, heat or power. A survey made on April 1st and 2nd, 1947 showed that the boilers were "opened up and dry", the generators had been disconnected, and the bearings had been taken apart and preserved in grease. Some of the piping had been disassembled and on the main engine, "the bearings, the packing rings were all loose", so that "there would have been a great deal of work to put the engineering part of the ship back into operation". It was estimated that to open the vessel up for Coast Guard inspection alone would cost $40,000, and to convert the boat into a "luxurious excursion vessel, meeting the requirements of all inspection bodies" would cost "somewhere between $500,000 and a million dollars." The above condition of the ship remained unchanged until she was

532

sold for scrap in 1948. Thus, at the time libelants entered into the contract and performed their services, in order for the Meteor to have been returned to navigation and commerce, would have required very extensive repairs and proper documentation.

### Conclusion of Law

The Meteor was a "dead" ship at the time in question, and no maritime lien arose for the painting service performed by libelants, so that this Court is without jurisdiction over the instant suit.

Submit usual decree on notice.