GLICKSTEIN, Judge.
Plaintiff appeals the final judgment in favor of the defendant. We affirm in part, reverse in part and remand with direction, addressing only those issues here which we believe warrant discussion in the opinion. All issues have been duly considered.
Plaintiff/appellant, Edward P. Bernier, filed a complaint against defendant/appel-lee, Broward Marine, Inc., for conversion of plaintiffs vessel. By amended complaint, plaintiff subsequently added an additional count for conversion of his personal effects that were aboard the vessel.
A grant of summary final judgment to Bernier in 1983 was appealed to this court. The trial court held that section 85.031(2), Florida Statutes, which pertains to non-judicial sale of property under a mechanics lien had been preempted by 46 United States Code section 975, under whose provisions Broward Marine should have proceeded; and therefore Broward Marine was liable to Bernier in the amount of his damages. In Broward Marine, Inc. v. Bernier, 453 So.2d 868 (Fla. 4th DCA 1984), this court held that summary judgment was inappropriate, as the movant had been unable conclusively to show the nonexistence of a genuine issue of material fact. A critical issue was whether the vessel may have become a “dead” (i.e., removed from navigation) vessel because of its long period of dry storage and the apparent dismantling of its engine. If it was a dead vessel, it did not fall within the ambit of 46 United States Code section 975.
Upon remand, Broward Marine moved to set a partial non-jury trial on the issue of whether the subject vessel was a dead vessel at the time of its sale. The court granted this motion. Appellant made no objection to a non-jury trial upon this issue. The trial court held the vessel was a dead ship, so that the federal law did not preempt section 85.031(2), Florida Statutes. We affirm this conclusion. A jury trial was held on the remaining issues, and the court entered a direct verdict in favor of Broward Marine, and thereafter entered its conclusions of law and final judgment in favor of the defendant. Plaintiff timely filed this appeal. We reverse the directed verdict and remand.
Probably in May 1967, Bernier brought his yacht, the Dagon, a 14 ton 1933, “classic” vessel, to Broward Marine for storage. In 1974, the vessel was hauled from the water and stored in dry dock. During the next six years, during which the Dagon remained so stored, Bernier paid no storage bills.
In April 1980, Broward Marine resorted to self-help, claiming a valid lien pursuant to section 713.58(1) and 713.60, Florida Statutes, Broward Marine sold the Dagon in accordance with the provisions of section 85.031(2), Florida Statutes. Thereafter Bernier filed suit for conversion.
There was evidence the yacht had been continually in dry dock since 1974, and in need of major hull repair before she could be refloated. The main engine did not work since 1975 and was dismantled. Ber-nier, admitted these facts. The auxiliary engine apparently was operable. Bernier testified he had stopped paying storage after the vessel had been robbed a number of times in or about 1974. He was planning to sue the yard because of the robberies and his then lawyer advised him to stop paying. The yard had never told him not to pay storage. Bernier visited his boat very infrequently. The Dagon was, throughout Bernier’s ownership, apparently documented for commercial fishing.
Frank A. Dennison, Broward Marine’s owner, stated in a deposition that he had put a stop to sending bills to Bernier in 1977, because mailings had not reached him for some time, and then did not know his address.
An attorney, Robert Paul Keeley, testified he had researched for Broward Marine how it could rid itself of the deteriorating vessel, and he recommended the non-judicial sale pursuant to section 85.031(2), Florida Statutes, saying he had made a diligent search for Bernier both by mail and in *1381 person, but to no avail. He advertised the sale and conducted it himself. There were other bidders than the purchaser, Richard Banach.
Richard Banach is a boat carpenter. Since 1976 or 1977 he lived on a friend’s boat at Broward Marine. He became aware of the Dagon, expressed an interest in buying her, found out Bernier owned her, and wrote to him at the address Bro-ward Marine gave him at Bahia Mar. He never received a response. He bid on the vessel at the auction, and had the winning bid at $700, denying he had any inside track as to the auction. Banach testified he moved the vessel by truck to his workshop — she was not seaworthy — and began to rebuild her about a year later. There were photographs showing the missing planks and deterioration of the bottom of the vessel. Banach said he would have paid up to $1,000 for the vessel.
Bernier testified personal belongings of his and repair supplies had been aboard the vessel. The property included his service uniforms (he had been master of an air-sea rescue vessel at the Boca Raton Air Force Base), foul weather gear, winter clothing, fastenings worth several hundred dollars, and other items. He valued the personal property at $15,000. These had been sold with the vessel. At some point Banach returned four boxes of personal letters and correspondence to Bernier.
Bernier said he signed in to visit the vessel in the latter part of March 1980, about three weeks before the sale, but nothing was said to him about the storage fees or the projected auction.
The issues, restated, are as follows:
I. Whether the trial court erred constitutionally in deciding by non-jury trial that the subject vessel was a dead vessel, and therefore 46 U.S.C. § 975 did not preempt Florida law respecting disposition of property claimed under a lien. We conclude it did not because the defendant made no objection to non-jury trial.
II. Whether the trial court erred in finding inapplicable section 371.84 (now section 328.17), Florida Statutes, respecting non-judicial sale of vessels, which statute became effective July 1, 1978. We conclude it did not and further conclude discussion is unnecessary.
III.Whether the trial court erred in determining that section 85.031(2) Florida Statutes applied. We conclude it did.
IY. Whether the trial court erred in determining that the subject vessel was a dead ship, thus ruling out federal preemption. We conclude it did not and further conclude discussion is unnecessary.
V. Whether the trial court erred in denying plaintiff’s motion, presented on the day of trial, to amend the complaint to include a claim under section 812.035, Florida Statutes, for treble damages. We conclude it did.
I
In its motion to set partial non-jury trial, appellee pointed out that the appellate court had said there were questions of fact relative to whether the vessel was a dead vessel, and reasoned that under federal law matters of lien are tried to a court and not to a jury. In the joint pretrial stipulation there was a general stipulation that “the issue as to a federal preemption is a matter of law for the court to decide.”
We do not think appellant may now challenge the fact the court without jury decided the question of whether the vessel was dead; we think Bernier at least acquiesced in having a nonjury trial on all matters relating to the preemption issue, by virtue of the above general stipulation, and also because we find nothing in the record to show that appellant objected to the nonjury trial of this question or requested that it be tried by jury.
II
The critical language of section 85.-031(2), Florida Statutes, on which hinges appellant’s contention that that section was not properly applicable in this case, is as follows:
(2) BY SALE WITHOUT JUDICIAL PROCEEDINGS. — When any person entrusts to any mechanic or laborer, mate *1382 rials with which to construct, alter or repair any article of value, or any article of value to be altered or repaired, and if the article is completed and not taken away, and the reasonable charges not paid, such mechanic or laborer may sell it after 3 months from the time such charges become due at public auction for cash but before the sale the mechanic or laborer shall give public notice of the time and place thereof, by notices posted for 10 days in 3 public places in the county, one of which shall be at the courthouse, and another in some conspicuous part of his shop or place of business.
(Emphasis added). Appellant maintains, we think soundly, that non-judicial sale for storage fees is not authorized by this section. Appellee relies upon Richwagen v. Lilienthal, 386 So.2d 247 (Fla. 4th DCA 1980), for the position that a lien for storage charges may be enforced pursuant to section 85.031. However, the vessel in Rich-wagen, that arguably could have been sold under section 85.031 (had that section been complied with there), had not merely been placed in storage, but had had unpaid for services performed on it in the nature of moving, reblocking and pumping; and according to its dictum this court was prepared to regard this as within the ambit of section 85.031. We now hold section 85.031 refers to what amounts to mechanic’s liens on personal property, and the unpaid for services must result in the repair or alteration of the property.
In the instant ease, the composite statement exhibited by defendant reflects solely unpaid storage fees. We do not see how a statute that states how a lien for labor or services on personal property may be enforced without formal judicial action can apply as to storage charges. It is possible that section 677.209, which provides for warehouseman’s liens, is applicable in this case, if a warehouse receipt was issued (see Richwagen). However, a warehouseman’s lien is enforceable pursuant to section 677.-210(2), if, as here, the goods involved are not those stored by a merchant in the course of his business; and the procedures required there are quite different from and stricter than those of section 85.031(2), which appellee followed. A lien may here alternatively have been proper pursuant to section 713.60, Florida Statutes; but we do not think such a lien may be enforced by non-judicial sale.
Ill
Appellant’s last issue alleges it was error for the trial court to deny him leave on the day trial began to amend his complaint so as to demand treble damages under the civil theft statute. Because this case is reversed and remanded for new trial, appellant will and should have the opportunity under Florida Rule of Civil Procedure 1.190(a) to amend his complaint.
LETTS and STONE, JJ., concur.